## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ICM US OPERATING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-00678-K |
| | § | |
| INDUSTRIAS COSTA MESA, S.A. de | § | |
| C.V., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Industrias Costa Mesa, S.A. de C.V.'s ("ICM Mexico") Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Brief in Support of Motion (the "Motion to Dismiss"), Doc. No. 18, Plaintiff ICM US Operating, LLC's ("ICM US") Response to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Brief in Support Thereof, Doc. Nos. 20–21, ICM Mexico's Reply Brief in Support of Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Doc. No. 22, ICM US's Opposed Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Dismiss Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion for Leave"), Doc. No. 23, and ICM Mexico's Brief in Opposition to Plaintiff's Motion for Leave to File Sur-Reply.  Doc. No. 24.  The Court **DENIES** ICM US's Motion for Leave to file a sur-reply brief because its response brief fairly raises all of the arguments presented in its proposed sur-reply brief, and the Court has reviewed those arguments.

1

Upon consideration of the Parties' remaining submissions, the Court **GRANTS** ICM Mexico's Motion to Dismiss ICM US's claims in part with prejudice and **DENIES** it in part.  ICM US leased oil and gas equipment to ICM Mexico in 2013, sued ICM Mexico for failing to return the equipment or pay rent in 2019, and served ICM Mexico in 2023.  ICM Mexico says that Texas's four-year statute of limitations bars ICM US's breach of contract claims in their entirety.  The Court concludes at this stage that it bars them in part.  ICM US sufficiently alleges that it timely filed two sets of claims: its claims for rent payments missed within four years of the date it sued ICM Mexico, and its claim for return of the leased equipment.  ICM Mexico suggests that all of ICM US's claims accrued more than four years before filing upon the termination of the parties' lease, but the Court declines to adopt this reasoning until the parties have developed relevant facts because ICM US plausibly disputes the date of the termination.  ICM US's claims for rent payments missed more than four years before it sued ICM Mexico are untimely, and the Court dismisses those claims with prejudice.  Although ICM US protests that ICM Mexico's creditors discouraged ICM US from litigating while secretly plotting to acquire ICM Mexico and refuse payments under the parties' lease, ICM US could not reasonably rely on their advice.  The creditors' statements were noncommittal, and ICM US discovered their plot well before the statute of limitations ran.

Having separated the claims that might be timely from the claims that are not, the Court declines to dismiss the potentially timely claims based on ICM US's delays

in serving ICM Mexico.  ICM US has provided a plausible explanation for the delays. It says that it was investigating where to serve ICM Mexico in Mexico, preparing and correcting international service papers, and trying to convince Mexican officials to serve ICM Mexico despite a government-ordered suspension of international service.  ICM Mexico may test that explanation with evidence at a later stage.

Since the Court allows some of ICM US's claims to proceed, it rejects ICM Mexico's argument that ICM US cannot recover attorneys' fees because it has not sufficiently pled any claims.

## I.   BACKGROUND

Unless otherwise noted, the Court draws the following facts from ICM US's Third Amended Complaint and assumes that they are true.  Doc. No. 15.

In 2012, Oscar Villareal convinced a group of Ohio-based investors to pool over fifteen million dollars to form a vehicle for leasing oil and gas equipment that they called ICM US.  *Id.* ¶ 9.  ICM US served as a middleman between Aquila Sedco Drilling Co., LP ("Aquila"), which sold the equipment to ICM US, and an entity controlled by Mr. Villareal called ICM Mexico, which leased the equipment from ICM US.  *Id.* ¶¶ 9–13.

The lease between ICM US and ICM Mexico became effective on October 10, 2013 and had a stated term of two years.  *Id.* ¶¶ 12–15.  Under the lease, ICM Mexico owed ICM US monthly rent payments totaling $367,833.22.  *Id.* ¶ 14.  Unless ICM Mexico exercised an option to purchase the equipment, ICM Mexico had to continue

paying rent after the expiration or termination of the lease until ICM Mexico returned the leased equipment to ICM US. *Id.* ¶ 18. ICM Mexico also had to keep the equipment free of encumbrances unless it obtained ICM US's written consent to the encumbrances. *Id.* ¶ 25; Doc. No. 15-1 at 5.

At some point after ICM Mexico took possession of the equipment, it fell behind in making required rent payments. Doc. No. 15 ¶ 21. It also encumbered the equipment. *Id.* ¶¶ 25–26. In January 2014, ICM Mexico borrowed one hundred million dollars from Impulso Energia, S.A. de C.V. ("Impulso") and Compania de Energia Mexoil S.A. de C.V. ("Mexoil") and purported to give one or both of the entities an unspecified interest in the equipment. *Id.*

In May 2014, representatives of ICM US met with representatives of Impulso and Mexoil in Mexico City to discuss their respective rights against ICM Mexico and Mr. Villareal and to coordinate their pursuit of those rights. *Id.* ¶¶ 27–28. The Impulso and Mexoil representatives encouraged their ICM US counterparts to refrain from litigation or other legal action in favor of alternative options. *Id.* ¶ 29. This advice was less than disinterested. *Id.* ¶¶ 30–31. Impulso and Mexoil were secretly planning to seize control of ICM Mexico and withhold payments from ICM US, a plan they executed in June 2014. *Id.* In ICM US's retelling of allegations purportedly made by Mr. Villareal, Mr. Villareal relinquished his interest in ICM Mexico to Impulso and Mexoil after the latter companies had him imprisoned and threatened his family and him with violence and extended incarceration. *Id.* ¶ 31.

Under the control of Impulso and Mexoil, ICM Mexico continued to rebuff ICM US's demands for payment under the parties' equipment lease. *Id.* ¶¶ 32, 37–38. On November 16, 2014, Aquila sent ICM Mexico a letter purporting to terminate the lease on behalf of ICM US. *Id.* ¶ 22. ICM Mexico nonetheless retained possession of the leased equipment, which it continues to lease to third parties for its own benefit. *Id.* ¶¶ 37–38.

On April 3, 2019, ICM US sued ICM Mexico in the 160th Judicial District Court of Dallas County, presumably in deference to a clause of the parties' lease selecting state and federal courts in the county as the forum for their disputes. *Id.* ¶ 39; Doc. No. 15-1 at 6.

A tortuous saga of international service of process followed. Doc. No. 15 ¶¶ 40–59. ICM US hired a firm of international process servers and directed a previously-retained private investigation firm to find a current address for ICM Mexico. *Id.* ¶ 42. The investigation firm searched public records, conducted physical surveillance, and found an address by June 2019. *Id.* ¶ 43. Apparently concerned that ICM Mexico had not registered its business using the address and that the address might not satisfy international service requirements, ICM US continued its investigation. *Id.* ¶ 44. It finally amended its state court petition to include the address on September 19, 2019. *Id.* ¶ 45.

When the state court issued a citation for service of the amended petition eleven days later, the document had a pair of technical defects that caused further delays. *Id.*

5

¶ 46.  Over the next month, ICM US called the court, participated in a live discussion with court personnel, and sent a lengthy letter to the court expressing its concerns.  *Id.* Despite these efforts, the court reissued the citation with a defect and did not issue a third, corrected citation until November 13, 2019.  *Id.*  ICM US prepared international service papers to accompany the citation and sent them to the court with instructions for execution on December 18, 2019.  *Id.* ¶ 47.

This led to an extended back-and-forth with the court.  *Id.* ¶¶ 47–49.  Three weeks after ICM US sent the papers, the court asked for a different version of one document, which ICM US provided about two weeks later, on January 23, 2020.  *Id.* ¶ 47.  The court then proposed alterations to the signature block on the papers to which ICM US objected.  *Id.* ¶ 48.  ICM US resolved the issue by sending further-revised papers to the court on February 20, 2020.  *Id.*  The court executed the final papers and delivered them to ICM US on February 25, 2020.

At this point, ICM US's process servers began translating the papers, an enterprise that ended nearly two months later, on April 16, 2020.  *Id.* ¶¶ 50–51.  The process servers submitted the papers to the Mexican Ministry of Foreign Affairs on April 20, 2020, more than a year after ICM US filed its suit.  *Id.* ¶ 51.

This expenditure of time came to nothing.  By the time ICM US submitted its papers, the Ministry of Foreign Affairs had halted international service in response to the global COVID-19 pandemic declared in the middle of March 2020.  *Id.* ¶¶ 51–52. ICM US's Mexican counsel fruitlessly monitored for service of the company's amended

petition and attempted to contact the ministry. *Id.* ¶ 52. After eighteen months, counsel also filed an action against the ministry to compel service, but the ministry soon preempted the action's resolution. *Id.* ¶¶ 53–54. Around October 29, 2021, ICM US learned from the state court that the ministry had attempted service without success because ICM Mexico had abandoned its address. *Id.* ¶ 54. ICM US speculates that ICM Mexico failed to properly update its address in accordance with Mexican procedures. *Id.*

The failure of service touched off a new search for ICM Mexico's address. *Id.* ¶ 55. With the help of its private investigators and Mexican counsel, ICM US located a candidate address on January 21, 2022. *Id.* The address appeared in a taxpayer identification filing submitted by ICM Mexico. *Id.*; Doc. No. 15-1. The filing bears a 2019 date of issuance but no indication of the date it became accessible to ICM US. Doc. No. 15-1 at 31, 36. On February 21, 2022, ICM US amended its state court petition to include the address in the filing. Doc. No. 15 ¶ 56.

The state court issued a citation on March 3, 2022 without incident, and ICM US sent international service papers to the court on April 11, 2022. *Id.* ICM US and the state court again wrangled over the formatting of the papers, leading ICM to submit reformatted papers on April 20, 2022. *Id.* On May 25, 2022 ICM US received executed service papers from the state court, and it relayed the papers to its process servers for translation eight days later. *Id.* ¶ 57. Translation took more than two months. *Id.*

On August 3, 2022, the process servers informed ICM US that they had completed the translation and would send the papers to the Mexican Ministry of Foreign Affairs. *Id.* The Ministry acknowledged receipt on August 15, 2022. *Id.* ¶ 58. It served ICM Mexico on March 14, 2023. *Id.* ¶ 59.

Following service, ICM Mexico removed ICM US's state court suit to this Court. Doc. No. 1. ICM US amended its complaint and seeks recovery of the equipment it leased to ICM Mexico, damages, and attorneys' fees as remedies for ICM Mexico's alleged breaches of the parties' lease. Doc. No. 15 at 17–20. ICM Mexico has moved to dismiss ICM US's claims as time-barred. Doc. No. 18.

## II.   LEGAL STANDARD

The Court will dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) if ICM US fails to plead facts sufficient to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the plausibility of a claim, the Court assumes that ICM US's factual allegations are true but does not assume that its legal conclusions are true. *Id.* at 678–79. The Court will also dismiss a claim if ICM US's allegations show that the statute of limitations for the claim has run unless ICM US pleads some basis for tolling the statute of limitations. *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 200 (5th Cir. 2021). As part of its review of ICM US's claims, the Court considers the attachments to ICM US's complaint in addition to the complaint itself. *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The parties assume that the law of Texas applies to ICM US's claims and ICM Mexico's statute of limitations defense. Doc. Nos. 18, 21–22. The Court joins in their assumption. *Reynolds v. American-Amicable Life Ins. Co.*, 591 F.2d 343, 344 (5th Cir. 1979) (per curiam); *Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53 (1980).

## III. DISCUSSION

The Court permits ICM US to proceed only with its claims for payments missed by ICM Mexico on or after April 3, 2015, its claim for return of the equipment it leased to ICM Mexico, and its request for attorneys' fees. After explaining why the claims arising on or after April 3, 2015 and the claim for return of the equipment are plausibly timely in the next subsection, the Court explains why ICM US's remaining claims under the lease are untimely in the following section. The Court then explains in the third subsection that the parties must present evidence before the Court can conclude that ICM US's delays in serving ICM Mexico affect the timeliness of ICM US's claims. The Court concludes its discussion in the fourth subsection, where it explains why it will allow ICM US to pursue an award of attorneys' fees.

### A. Plausibly Timely-Filed Claims

ICM US has plausibly alleged that it timely filed its claims for payments ICM Mexico allegedly missed after April 3, 2015 and its claim for recovery of the equipment it leased to ICM Mexico. While the parties' raise factual issues that may affect the

filing deadlines for these claims, the Court is unable to resolve the issues without a presentation of relevant evidence.

Whether ICM US timely filed its claims depends on when the claims accrued because accrual sets the corresponding statutes of limitations running. *Carl M. Archer Tr. No. Three v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018). The factual allegations on which ICM US relies to establish accrual are simple. According to ICM US, ICM Mexico agreed to and failed to make regular rent payments to ICM US both before and after the parties' lease terminated or expired. Doc. No. 15 ¶¶ 17–18, 37–38. ICM Mexico also allegedly breached the lease by failing to return the leased equipment to ICM US after the lease terminated. *Id.* ¶¶ 37–38.

As to the rent payments, these allegations indicate that each payment is separate compensation for the possession of the equipment during a separate period, so ICM US acquired a separate claim subject to a separate statute of limitations each time ICM Mexico allegedly failed to make a payment. *See F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 464–65 (Tex. App.—Austin 1994, no writ); *Vt. Info. Processing, Inc. v. Mont. Beverage Corp.*, 227 S.W.3d 846, 855 (Tex. App.—El Paso 2007, no pet.); *Townewest Homeowners Ass'n v. Warner Commc'n, Inc.*, 826 S.W.2d 638, 640 (Tex. App.— Houston [14th Dist.] 1992, no writ). That gave ICM US four years after each missed payment to sue ICM Mexico to recover the sum it should have received. Tex. Bus. & Com. Code § 2A.506(a). Since ICM US sued ICM Mexico on April 3, 2019, its claims for payments missed on or after April 3, 2015 are at least facially timely filed.

That is not the end of the matter because there is some dispute between the parties about whether any claims accrued on or after April 3, 2015. The dispute centers on whether their lease terminated before April 3, 2015 and whether the termination date affects the timeliness analysis. *See, e.g.*, Doc. No. 21 at 18; Doc. No. 22 at 9–10. ICM Mexico pinpoints the date of termination as November 26, 2014, when a non-party, Aquila, purported to terminate the lease on ICM US's behalf. Doc. No. 22 at 9–10. It asserts that this termination, which occurred outside the limitations period, stopped ICM US's claims from accruing and makes ICM US's claims untimely. Doc. No. 18 at 13. ICM US responds with less specificity but appears to believe that the lease terminated no earlier than the expiration of its natural term on October 10, 2015. *See* Doc. No. 21 at 18; Doc. No. 15-1 at 24. It also says that the timeliness of its claims does not turn on the date of termination because the lease imposed post-termination rent obligations on ICM Mexico that continued to accrue. Doc. No. 21 at 18–19.

The Court declines to dismiss claims for payments missed on or after April 3, 2015 until the parties' have developed and presented the contested facts surrounding the termination of their lease. Since ICM US disputes Aquila's authority to terminate the lease and its pleading is ambiguous on the point, the Court cannot adopt ICM Mexico's position that Aquila terminated the lease in November 2014 at this stage. Doc. No. 21 at 18; Doc. No. 15 ¶ 22. If the Court later finds that Aquila terminated the parties' lease before April 3, 2015, the Court may need to rule on ICM US's

11

argument that some of ICM US's claims continued to accrue after termination. No such ruling is necessary now.

The Court likewise defers its ruling on the accrual and timeliness of ICM US's claim for return of the equipment it leased to ICM Mexico. ICM Mexico contends that the claim accrued at the termination of the lease, which, on ICM Mexico's view, occurred outside the limitations period. Doc. No. 18 at 13. If the Court finds that the parties' lease terminated within the limitations period, the premise of ICM Mexico's argument will fail. A ruling on the argument must await the development of the facts establishing the date of termination.

Finding nothing in ICM US's pleading establishing that it failed to timely file its claims for payments missed on or after April 3, 2015 or its claim for return of leased equipment, the Court declines to dismiss those claims as untimely filed.

## B. Untimely-Filed Claims

The Court concludes that claims for payments missed before April 3, 2015 are time-barred and dismisses them with prejudice. The statute of limitations required ICM US to file each claim within four years after ICM Mexico missed payment, and ICM US filed its suit four years after April 3, 2015, on April 3, 2019. Tex. Bus. & Com. Code § 2A.506(a).

ICM US does not dispute that its pre-April 3, 2015 claims are facially untimely, but it tries to salvage them by blaming ICM Mexico for its filing delays. Its argument turns on the conduct of two of ICM Mexico's creditors, Impulso and Mexoil, who later

acquired ICM Mexico.  Doc. No. 15 ¶¶ 25–31.  According to ICM US, Impulso and Mexoil met with ICM US in May 2014 and "encouraged ICM US not to pursue legal action" against ICM Mexico or to "speak of litigation at that time, to allow for pursuit of other avenues."  *Id.* ¶¶ 27–29.  ICM US says that this advice was misleading because Impulso and Mexoil did not disclose their intention to "take over ICM Mexico for themselves, without any reimbursement or payment to ICM US."  *Id.* ¶ 30.  It concludes that principles of equitable estoppel prevent ICM Mexico from attacking the timeliness of its claims.  Doc. No. 21 at 17.

As ICM US notes, equitable estoppel may keep a party from raising a statute of limitations defense when it has induced its opposing party to delay filing suit until after the limitations period has ended.  *Cook v. Smith*, 673 S.W.2d 232, 235 (Tex. App.—Dallas 1984, writ ref'd n.r.e).  For an equitable estoppel theory to succeed, the inducement must be a material misrepresentation or concealment of a fact that the party actually or constructively knows but the opposing party does not.  *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 366 (5th Cir. 1988).  The opposing party's "initial and continued reliance upon the original inducement" must also be reasonable.  *Rendon v. Roman Cath. Diocese of Amarillo*, 60 S.W.3d 389, 391 (Tex. App.—Amarillo 2001, pet. denied).

It is doubtful ICM US has pled the threshold fact that ICM Mexico is responsible for inducing ICM US to refrain from litigation.  ICM US does not allege that ICM Mexico was involved in the meeting where Impulso and Mexoil encouraged ICM US

to seek alternatives to litigation.  It also does not allege that Impulso or Mexoil acted on ICM Mexico's behalf.  *Cf. Frank v. Bradshaw*, 920 S.W.2d 699, 702 (Tex. App.—Houston [1st Dist.] 1996, no writ).  Charging ICM Mexico with responsibility for Impulso's and Mexoil's purportedly misleading conduct would have some intuitive appeal if Impulso and Mexoil merged with ICM Mexico when they acquired it, but ICM US does not pursue this theory.

The Court will nonetheless assume that ICM Mexico is answerable for Impulso's and Mexoil's conduct because the more striking deficiency in ICM US's pleading is its failure to allege reasonable reliance on that conduct.

The wisdom of ICM US's purported reliance was dubious at the outset.  ICM US received no assurance from Impulso or Mexoil that ICM Mexico would waive its statute of limitations defense or compromise ICM US's claims if the statute of limitations ran.  Impulso and Mexoil simply stated a preference for exploring non-legal resolution of the claims.  Doc. No. 15 ¶ 29.  Even without knowing that Impulso and Mexoil intended to acquire ICM Mexico and deny the claims, relying on their noncommittal statements to the exclusion of filing a suit that would toll the statute of limitations was a risky gamble.  *See Lockard v. Deitch*, 855 S.W.2d 104, 106 (Tex. App.—Corpus Christi 1993, no writ) (statement that defendant would "try to work towards a settlement" with plaintiffs did not estop him from raising statute of limitations defense); *Albertsons, Inc. v. JTM Materials, Inc.*, 2001 WL 43011, at *3 (Tex. App.—Austin Jan. 19, 2001, no pet.) (invitation to begin settlement negotiations); *Dixon v. Lee*, 1998 WL

802460, at *2 (Tex. App.—Houston [14th Dist.] Nov. 19, 1998, no pet.) (statement that defendant would attempt to exhaust negotiations before litigation was necessary). That the statements came from creditors of ICM Mexico who might stand to lose if ICM US filed suit only heightened the danger.  Doc. No. 15 ¶¶ 26–28.

Events quickly confirmed that ICM US's reliance on Impulso's and Mexoil's statements was unreasonable.  In June 2014, a month after representatives of Impulso, Mexoil, and ICM US met, Impulso and Mexoil allegedly acquired ICM Mexico.  *Id.* ¶ 31.  From the time of acquisition, Impulso and Mexoil allegedly "refused to recognize ICM US's rights" under its lease with ICM Mexico, and they repeatedly rejected ICM US's demands for rent payments required by the lease.  *Id.* ¶¶ 32, 37–38.  This should have sent ICM US scurrying, or at least sauntering, to the courthouse.  The lease allegedly became effective in October 2013, meaning that ICM US had, at minimum, over three years sue the newly-acquired ICM Mexico under the four-year statute of limitations.  *Id.* 15 ¶ 11.  ICM US instead waited until April 2019 to file suit.  *Id.* ¶ 39.  No plausible interpretation of the facts alleged by ICM US could attribute its yearslong delay to reasonable reliance on misleading statements made in the spring of 2014 whose true significance was apparent by the summer.  *See Leonard v. Eskew,* 731 S.W.2d 124, 135 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Cont'l Cas. Co. v. Dr. Pepper Bottling Co. of Tex.,* 2005 WL 440395, at *8 (N.D. Tex. Feb. 23, 2005) (Ramirez, M.J.).

ICM US answers that dismissal of its claims is inappropriate even if it has not properly pled its equitable estoppel theory, but the Court sees nothing that requires

this curious result.  ICM US points to *Exxon Mobil Corp. v. Rincones*, a case holding that a plaintiff may overcome a statute of limitations defense at the summary judgment stage by presenting evidence indicating that the defendant is estopped from raising the defense.  520 S.W.3d 572, 593 (Tex. 2017).  How that holding aids ICM US is unclear. The Court does not read *Rincones* to require the Court to accept evidentiary submissions before ruling on an equitable estoppel theory.  *Rincones* states the truism that the procedure for resolving summary judgment motions requires summary judgment evidence. The Court will not deny ICM Mexico's Motion to Dismiss ICM US's claims on the possibility that ICM US will support its arguments for equitable estoppel with unspecified summary judgment evidence that goes beyond the scope of its pleading.  *See Doe v. Baylor Univ.*, 313 F. Supp. 3d 786, 793 (W.D. Tex. 2018).

Having concluded that ICM US's claims for payments missed before April 3, 2015 are facially untimely and that principles of equitable estoppel do not save them from dismissal, the Court dismisses the claims with prejudice.  ICM US does not ask for leave to amend its pleading with new allegations that answer ICM Mexico's statute of limitations defense, and it does not suggest that there are any relevant allegations it might add.  The Court will not on its own initiative give ICM US leave to amend its pleading further.  *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012).

### C. Diligent Service

The Court declines to dismiss any of ICM US's timely-filed claims for failure to diligently serve ICM Mexico.  While the Court agrees with ICM Mexico that ICM US took an exceptionally long time to serve the citation and petition in this action, the Court is unwilling at this stage of proceedings to say that ICM US's service efforts were unreasonable.

Under Texas law, ICM US could satisfy the statute of limitations for any one of its claims by filing suit within the limitations period and diligently serving ICM Mexico at a later date, even if it fell outside the period.  *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007).  Pursuing service like an "ordinary prudent person" until effecting it would be enough to meet the diligence standard.  *Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992); *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009).

ICM Mexico contends that ICM US failed to meet the standard, which would mean that the statute of limitations continued to run from the time ICM US filed suit to the time it served ICM Mexico.  *See Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990); *Universal Wheel Shield, Inc. v. Laco Auto Leasing, Inc.*, 429 S.W.2d 942, 944 (Tex. Civ. App.—Tyler 1968, no writ).  Since some of ICM US's claims accrued more than four years before it served ICM Mexico on March 30, 2023, the four-year statute of limitations would bar those claims on ICM Mexico's view.  Doc. No. 15 ¶ 59; Tex. Bus. & Com. Code § 2A.506(a).

17

As narrated in ICM US's Third Amended Complaint, ICM US's service efforts were slow, but they were also continuous. ICM US's third-party investigators took two months after ICM US filed suit in state court to identify an address for ICM Mexico. Doc. No. 15 ¶¶ 39, 43. After the investigators identified the address, ICM US spent another two months or more having its investigators do confirmatory research on the address before it sought a citation for service on ICM Mexico. *Id.* ¶ 44. Between the issuance of the citation and the state court's execution of international service papers, seven months passed during which ICM US drew up the papers, revised them, translated them, and communicated with the state court to correct errors it made or nearly made in issuing or executing them. *Id.* ¶¶ 46–51. When ICM US learned that its first service attempt failed, it reinitiated a similar process. It superintended a three-month search for ICM Mexico's address, which it found on a 2019 tax form, and spent another seven months preparing service papers and coordinating with the state court. *Id.* ¶¶ 55–57; Doc. No. 15-1 at 31.

Slow as they were, the Court cannot conclude that ICM US's service efforts were insufficient as pled. The Court generally leaves the assessment of a plaintiff's diligence in service to the jury unless the plaintiff fails to provide a valid explanation for its delays or offers an explanation that is implausible or contrary to conclusive evidence. *Rogers v. Dunham*, 478 F. App'x 875, 877 (5th Cir. 2012); *Saenz*, 951 F.2d at 667.

ICM US has explained that the many delays in its service of ICM Mexico correspond to time it spent in activities necessary to service, including investigating where

to serve ICM Mexico and preparing papers for service in Mexico.  Doc. No. 15 ¶¶ 39–55.  This explanation finds plausible support in ICM US's allegations.  ICM US had to find ICM Mexico before it could serve it, and locating a defendant can be a difficult process, particularly when the defendant resides abroad like ICM Mexico.  *Georgiou v. Battery Junction Corp.*, 2023 WL 7107117, at *7 (N.D. Tex. Sept. 25, 2023) (Ray, M.J.), *rep. & rec. adopted*, 2023 WL 7224187 (N.D. Tex. Nov. 2, 2023) (O'Connor, J.); *see also Proulx*, 235 S.W.3d at 216–17; *Trice v. Tentzer*, 2000 WL 1125246, at *3 (Tex. App.—Austin Aug. 10, 2000, no pet.).  ICM US would have saved much time if it identified the correct address for ICM Mexico before making its first service attempt, but its use of a mistaken address may well have been reasonable since months of investigation went into procuring the address.  *See WFG Lender Servs., LLC v. SLK Glob. BPO Servs. Pvt. Ltd.*, 2019 WL 13418433, at *12 (S.D. Tex. Jan. 22, 2019) (finding reasonably mistaken service attempt consistent with diligent service).  Nobody has suggested that the 2019 tax form that revealed ICM Mexico's true address was accessible before the initial service attempt.  Once ICM US found ICM Mexico, immediate service still was not guaranteed.  Each time it discovered a probable address for ICM Mexico, ICM US had to prepare and translate papers for service, which plausibly required additional time.  *See Greene v. Le Dorze*, 1998 WL 158632, at *5 (N.D. Tex. Mar. 24, 1998) (Buchmeyer, C.J.).

Other notable delays in service occurred, but ICM US attributes them to the suspension of international service ordered by the Mexican Foreign Ministry and to

errors made by the state court that executed the service papers.  Doc. No. 15 ¶ 52; Doc.

No. 21 at 21–26.  ICM Mexico does not object to the delays caused by the suspension,

and the state court's mistakes, if proven, may reasonably have caused at least some

delay that cannot fairly be attributed to ICM US.  *See M & A Tech., Inc. v. iValue Grp.,*

*Inc.*, 295 S.W.3d 356, 370 (Tex. App.—El Paso 2009, pet. denied).

Since ICM US has explained its service delays and its explanation is plausible,

ICM Mexico must challenge ICM US's explanation with evidence.  That challenge can-

not succeed on the limited factual materials currently before the Court.  It may succeed

at a later stage on a fuller evidentiary record.  Discovery may show that ICM US's

investigations, preparation of papers, and other service activities were not actually nec-

essary or that ICM US did not prosecute them expeditiously.  *Cf. Rogers*, 478 F. App'x

at 878.  Nearly fifteen hundred days between filing suit and service is a long time for

ICM US to fill with service efforts free of wasteful activity or inactivity.  The Court

leaves those evidentiary matters for consideration on factual submissions at summary

judgment or trial and denies ICM Mexico's Motion to Dismiss insofar as it asserts that

ICM US was not diligent in service.

### D. Attorneys' Fees

The Court declines to dismiss ICM US's request for attorneys' fees.  In a single

sentence in a footnote, ICM Mexico objects to the request on the theory that all of

ICM US's contract claims should be dismissed.  Doc. No. 18 at 14 n.2.  It contends

that no award of attorneys' fees could survive the complete dismissal of the claims.  *Id.*

Since the Court is not dismissing all of ICM US's claims, it cannot adopt ICM Mexico's reasoning.

## IV.    CONCLUSION

The Court **GRANTS** ICM Mexico' s Motion to Dismiss in part and **DENIES** it in part.  The Court **DISMISSES** ICM US's claims for payments missed before April 3, 2015 with prejudice.

**SO ORDERED.**

Signed January 10th, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE